UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RENAISSANCE EQUITY HOLDINGS LLC, et al.,     **MEMORANDUM AND ORDER**
Case No. 12-CV-1639 (FB) (SMG)

          Plaintiffs,

    -against-

SHAUN DONOVAN, in his official capacity as
Secretary of the United States Department of
Housing and Urban Development, UNITED
STATED DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, and UNITED
STATES OF AMERICA,

          Defendants.

------------------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
JOSEPH ZELMANOVITZ, ESQ.
EVAN M. NEWMAN, ESQ.
STAHL & ZELMANOVITZ
747 Third Avenue, Suite 33B
New York, NY 10017

*For the Defendants*:
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
BY:    AMEET B. KABRAWALA, ESQ.
         Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Plaintiffs Renaissance Equity Holdings LLC, Renaissance Equity Holdings LLC "A," Renaissance Equity Holdings LLC "B," Renaissance Equity Holdings LLC "C," Renaissance Equity Holdings LLC "D," Renaissance Equity Holdings LLC "E," Renaissance Equity Holdings LLC "F," and Renaissance Equity Holdings LLC "G," ("plaintiffs") bring this action against defendants Shaun Donovan, as Secretary of the United States Department of Housing and Urban Development, the United States Department of Housing and Urban Development ("HUD"), and the United States of America ("defendants") for violations of the

Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, and its implementing regulations, 24 C.F.R. § 982 *et seq.*  Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  As discussed below, defendants' motion is denied as to 12(b)(1) and granted as to 12(b)(6).

## I.   Background

For purposes of this motion the Court must accept as true all of the allegations in plaintiffs' complaint, and draw all inferences in plaintiffs' favor.  *See Weixel v. Board of Educ.*, 287 F. 3d 138, 145 (2d Cir. 2002).

Plaintiffs Renaissance Equity Holdings LLC "A" through "G" are corporations that own groups of units in a residential housing complex, which collectively constitute the "Flatbush Gardens complex" in Brooklyn, New York.  The seven entities are managed and operated by plaintiff Renaissance Equity Holdings, LLC.  Plaintiffs participate in the Section 8 Housing Choice Voucher Program, a federal program created by the United States Housing Act of 1937 and the Housing and Community Development Act of 1974 ("Section 8 program").  42 U.S.C. § 1437f.  The Section 8 program was created "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).  The program operates by providing federal subsidies to private building owners like plaintiffs, who lease apartment units to low-income families at a reduced rental rate.  The program is administered by local public housing agencies ("PHAs"), and these entities receive funding from HUD for their corresponding costs.  24 C.F.R. § 982.1(a)(1).  HUD's funding covers rental subsidy payments that PHAs make to building owners, as well as the costs that PHAs incur in administrating the program.  24

C.F.R. § 982.1(a)(1).  The amount and terms of the rental subsidy payments PHAs make to owners are determined by Housing Assistance Payment ("HAP") contracts executed by the PHAs and owners.  Building owners enter into separate leases with the respective low-income tenants, but do not contract directly with HUD.  The New York City Housing Authority ("NYCHA") is the PHA tasked with administering the Section 8 program in New York City.

HUD prescribes certain housing quality standards ("HQS") with which all Section 8 housing must comply in order for owners to receive the rental subsidies.[1]  42 U.S.C. § 1437f(o)(8); 24 C.F.R. § 982.401.  If the owner of Section 8 housing fails to maintain the unit in compliance with HQS, the PHA is obligated to "take prompt and vigorous action to enforce the owner obligations."  24 C.F.R. § 982.404(2).  Where an owner remains unable or unwilling to correct an HQS violation, the PHA is entitled to terminate the owner's Section 8 funding. 24 C.F.R. § 982.306(c)(1).

Plaintiffs allege that they entered into separate but identical HAP contracts with NYCHA providing for their participation in the Section 8 program for certain units in Flatbush Gardens.  They state that they provided Section 8 housing according to the terms of their HAP contracts, but did not receive corresponding Section 8 rental subsidy payments. They also claim that where certain of their units did not meet HQS, they were not timely notified of such violations, and where other units were repaired to meet HQS, these units were not re-inspected as required for reinstatement of Section 8 rental subsidy payments.

---

[1]HQS pertain to housing quality aspects that include space and security, thermal environment, illumination and electricity, interior air quality, and lead-based paint.  24 C.F.R. § 982.401.

Plaintiffs place the blame for their loss of Section 8 rental subsidy payments on HUD. Specifically, they contend that as a result of HUD's failure to fund the Section 8 program, NYCHA was unable to properly administer the program and make appropriate Section 8 rental subsidy payments. Plaintiffs also claim that HUD failed to adequately supervise NYCHA's administration of the Section 8 program, and that this failure likewise caused their loss of Section 8 benefits. Plaintiffs allege that HUD's actions have caused them to incur losses of more than $700,000 in back-rent. Accordingly, they seek damages and equitable relief for violations of 42 U.S.C. § 1347f and its implementing regulations, 24 C.F.R. § 982.51 *et seq.* and 982.401 *et seq.*

## II.    Analysis

Where a defendant moves for dismissal under Rule 12(b)(1) as well as other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Assocs.*, 896 F.2d 674, 678 (2d Cir. 1990). Accordingly, defendants' Rule 12(b)(1) arguments are discussed first.

## 1.    Subject Matter Jurisdiction and Sovereign Immunity

Defendants initially assert that the Court lacks subject matter jurisdiction to entertain plaintiffs' claims. Because plaintiffs' claims are alleged against the federal government, they must demonstrate "both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity." *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 117 (2d Cir. 1990). At the outset, plaintiffs contend that the Court has jurisdiction pursuant

to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Since the complaint alleges that plaintiffs' claims arise under the United States Housing Act, 42 U.S.C. § 1437f, there clearly is subject matter jurisdiction pursuant to § 1331. *See C.H. Sanders Co.*, 903 F.2d at 118 (court had subject matter jurisdiction where plaintiff alleged HUD failed to comply with the National Housing Act, 12 U.S.C. § 1701q; noting that a plaintiff is required only to "alleg[e] a cause of action, not patently frivolous on its face, that purportedly arises under a federal statute."); *FHM Constructors, Inc. v. Vill. of Canton Hous. Auth.*, 779 F. Supp. 677, 680-81 (N.D.N.Y. 1992) (court had subject matter jurisdiction under § 1331 where claims alleged against HUD arose under 42 U.S.C. § 1437 *et seq.*). While defendants do not challenge subject matter jurisdiction, they contend that plaintiffs have not demonstrated a waiver of sovereign immunity.

"The sovereign immunity defense . . . is grounded upon the ancient principle that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents." *United States v. Yonkers Bd. of Educ.*, 594 F. Supp. 466, 468 (S.D.N.Y. 1984). Plaintiffs assert that defendants have waived sovereign immunity pursuant to 42 U.S.C. § 1404a, which states: "The Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 et seq.] and title II of Public Law 671 . . . as amended [42 U.S.C.A. § 1501 et seq.]." 42 U.S.C. § 1404a.

Since the complaint alleges that defendants have failed to fulfill their statutory duties to fund and administer the Section 8 program pursuant to 42 U.S.C. § 1437f and its

5

regulations, defendants are not entitled to sovereign immunity in the face of their motion to dismiss. *See, e.g., Yonkers*, 594 F. Supp. at 470 (Section 1404a waives HUD's sovereign immunity "for claims alleging direct violations by HUD of the substantive provisions of the Housing Acts themselves."); *Ippolito-Lutz, Inc. v. Harris*, 473 F. Supp. 255, 259 (S.D.N.Y. 1979) (sovereign immunity waived under § 1404a where contractor sued HUD Secretary to recover costs incurred in building public housing project pursuant to United States Housing Act, 42 U.S.C. §§ 1401-1440 and where breaching housing authority was alleged to be HUD's alter ego); *FHM Constructors,* 779 F. Supp. at 681 (sovereign immunity waived under § 1404a where plaintiffs' allegations concerned a contractual provision required by HUD pursuant to 42 U.S.C. § 1437j(a)); *Valentine Prop. Assocs. v. U.S. Dep't Hous. & Urban Dev.*, 2007 WL 3146698, at *6 (S.D.N.Y. Oct. 12, 2007) (waiver under § 1404a where owners' claims were based upon contracts for Section 8 rental subsidy payments, concluding that in contracting for such housing, HUD had "act[ed] with respect to its functions under § 1437 . . . [t]hus it waived its sovereign immunity pursuant to § 1404a.").

It matters not, as defendants maintain, that HUD did not have a direct contractual relationship with plaintiffs. *See, e.g., Ippolito-Lutz, Inc.,* 473 F. Supp. at 259 (waiver under § 1404a where contractor built public housing pursuant to 42 U.S.C. §§ 1401-1440 but did not itself contract with HUD); *FHM Constructors,* 779 F. Supp. at 681 (waiver under § 1404a where plaintiff contracted with local housing authority for construction of low income housing project funded by HUD pursuant to 42 U.S.C. § 1437 *et seq*.).[2]

_____

[2]Because plaintiffs have demonstrated a waiver of sovereign immunity pursuant to § 1404a, the Court need not address whether a waiver exists under the Administrative Procedures Act.

**2.      Standing**

Defendants next contend that plaintiffs lack standing to bring this action. Specifically, they argue that because plaintiffs are unable to satisfy any of the three elements required for standing, the complaint should be dismissed.

"Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks omitted). "[S]tanding entails a complex three-pronged inquiry. First, plaintiffs must show that they have suffered an injury in fact that is both concrete in nature and particularized to them. Second, the injury must be fairly traceable to defendants' conduct. Third, the injury must be redressable by removal of defendants conduct." *In re U.S. Catholic Conference v. Baker*, 885 F.2d 1020, 1023-24 (2d Cir. 1989) (citing *Allen v. Wright*, 468 U.S. at 737, 735-37, 758-59 (1984)). "To establish standing, a plaintiff must plead all three elements." *Id.*

Plaintiffs have satisfied their burden of sufficiently pleading each element of standing. With respect to the injury prong, plaintiffs allege that they are participants in the Section 8 program, and have been deprived of their rightful entitlement to Section 8 rental subsidy payments. Although defendants contend otherwise, plaintiffs have not alleged injury stemming from any future right to participate in the Section 8 program. Accordingly, on their face plaintiffs' allegations of injury meet their burden as to the first standing element. *See McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 245 (S.D.N.Y. 1989) (plaintiffs satisfied injury element where they alleged "loss of Section 8 assistance" subsidy payments to which

they claimed entitlement); *GP-UHAB Hous. Dev. Fund Corp. v. Jackson*, 2006 WL 297704, at *6 (E.D.N.Y. Feb. 7, 2006) (injury prong met where plaintiffs alleged financial harm based upon non-payment of Section 8 housing subsidies).

Defendants next argue that plaintiffs' injuries are solely the result of NYCHA's actions, such that their injuries are not traceable to HUD's conduct.  However, plaintiffs repeatedly allege a direct link between HUD's failure to fund and supervise the Section 8 program and plaintiffs' resulting injuries.  *See, e.g.*, Compl. ¶¶ 25-26, 31 (plaintiffs' injuries were "a direct result of HUD's failure to properly fund and supervise NYCHA.").  Plaintiffs also contend that NYCHA was at the behest of HUD in administering the Section 8 program.  Compl. ¶¶ 12, 15-16, 20 ("HUD maintains ultimate control over the PHAs"; PHAs required to follow HUD policies).  Thus, plaintiffs have met their burden as to the second standing element—the causational link is not severed by the mere fact that HUD's actions are alleged to have in turn prevented NYCHA from properly administering the Section 8 program.  *See Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("[C]ausation is shown if the defendants' actions had a 'determinative or coercive effect' on the action that produced the injury. . . . [A] plaintiff need not allege that the defendants' actions [were] the very last step in the chain of causation.") (citation omitted); *see also Bennett v. Spear*, 520 U.S. 154, 169 (1997) (causation satisfied where the purported indirect cause played a "central role" in the decision that directly caused the plaintiff's injury, but where the decision-maker nevertheless retained some discretion); *McNeill*, 719 F. Supp. at 245 (second standing element satisfied where plaintiffs alleged a "direct link" between the PHA's policies and termination of their Section 8 benefits, despite defendants' argument that landlords' failure to maintain apartments

actually caused plaintiffs' termination of benefits due to the failure of the units to meet HQS).

Plaintiffs' allegations distinguish this case from those sources cited by defendants, wherein the alleged injury was "the product of independent choices" by a third party. *See, e.g., Garelick v. Sullivan*, 987 F.2d 913, 920 (2d Cir. 1993) (also noting that "[a] plaintiff does not lack standing merely because h[is] injury is an indirect product of the defendant's conduct."); *Butler v. Obama*, 814 F. Supp. 2d 230, 241-42 (E.D.N.Y. 2011) (plaintiff unable to establish causation element where injury resulted from "the independent decisions of insurance companies in response to a whole variety of potential factors . . . .").

Finally, plaintiffs have met their burden as to the third element of standing, requiring that the relief sought be reasonably calculated to redress their injuries.  Plaintiffs contend that if HUD is ordered to properly fund and supervise the Section 8 program, this will permit NYCHA to "properly administer and implement its obligations under the Section 8 program" and reinstate plaintiffs' Section 8 benefits.  That is, plaintiffs allege that if HUD properly funds and supervises the program, as it is statutorily obliged to do, plaintiffs' units will pass inspection and NYCHA will then pay them past-owed Section 8 rental subsidies. These allegations suffice to satisfy plaintiffs' burden of establishing standing with respect to redressibility.  *See McNeill*, 719 F. Supp. at 245 (finding relief sought in the form of retroactive payment of Section 8 benefits was "reasonably calculated to redress" injuries of alleged wrongful deprivation of Section 8 payments); *see also In re U.S. Catholic Conference*, 885 F.2d at 1024 ("The second and third prongs—traceability and redressability—often dovetail; essentially, both seek a causal nexus between the plaintiff's injury and the defendant's

9

assertedly unlawful act.").[3]

### 3.      Rule 12(b)(6) — Failure to State a Claim

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

There is no private right of action under the Housing Act enabling plaintiffs to sue defendants for violations of the statute and its implementing regulations.[4] By its express terms, the statute grants no such right. *See* 42 U.S.C. § 1437f. Rather, the implementing regulations pointedly disclaim the creation of a right of a party to assert claims based upon a failure of HUD to comply with the Housing Act. *See* 24 C.F.R. § 982.406 ("[The regulations] do[] not create any right of . . . any party other than HUD or the PHA, . . . to assert any claim

---

[3]Defendants confuse the standing analysis with the relative merits of plaintiffs' claims. These are two distinct inquiries. *See Carver*, 621 F.3d at 226 ("The standing question is distinct from whether [plaintiff] has a cause of action."); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the petitioner's contention that particular conduct is illegal.") (citation and internal quotations omitted). Whether plaintiffs have sufficiently alleged causes of action under 42 U.S.C. § 1437f for motion to dismiss purposes is analyzed in the following section under the Rule 12(b)(6) framework.

[4]Curiously, the parties' briefs focus almost entirely on subject matter jurisdiction. They make only a passing reference to the dispositive 12(b)(6) issue, and provide no significant citations or analysis.

against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce the HQS.").

Although the Second Circuit has yet to address the issue, the Seventh Circuit has come to a similar conclusion, as have numerous other district courts in this Circuit. *See, e.g.,* *Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir. 1993) ("[Section] 1437f does not create a private right of action."); *35-41 Clarkson LLC v. New York City Hous. Auth.*, 2012 WL 5992094, at *8-9 (S.D.N.Y. Nov. 30, 2012) (finding no express or implied private right of action for landlords to allege claims based upon housing authority's alleged violations of 42 U.S.C. § 1437f and 24 C.F.R. Part 982); *Montgomery v. City of New York*, 2010 WL 3563069, at *4-5 (S.D.N.Y. Sept. 7, 2010) (no express or implied private right of action under 42 U.S.C. § 1437f, where tenant alleged that HUD had failed to make Section 8 payments and enforce landlord's compliance with HQS pursuant to 42 U.S.C. § 1437f(o)(8)) (citing sources); *cf. Bose v. City of New York*, 2008 WL 564761, at *8-9 (E.D.N.Y. Feb. 27, 2008) (granting motion to dismiss tenant's § 1983 claim for violations of 42 U.S.C. § 1437f(o)(8) and 24 C.F.R. § 982.401 *et seq.*, where plaintiff alleged that HUD and local housing authority failed to comply with the statute and its regulations); *Lindsay v. New York City Hous. Auth.,* 1999 WL 104599, at *4 (E.D.N.Y. Feb. 24, 1999) (stating in dicta that 24 C.F.R. § 982.406 "unambiguously denies a private right of action"); *Roth v. City of Syracuse*, 96 F. Supp. 2d 171, 178 (N.D.N.Y. 2000) (dismissing landlords' § 1983 claims for violations of Housing Act and implementing regulations, in part because plaintiffs "failed to establish that they have a cognizable property right or interest in continued participation in the Section 8 housing program . . . ."), *aff'd*, 4 F. App'x 86 (2d Cir. 2001).

As plaintiffs have not alleged any other legally cognizable basis for relief under

the Act, their complaint will be dismissed in its entirety.[5]

## CONCLUSION

For the above reasons, the Court grants defendants' motion to dismiss the complaint with prejudice.

**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 21, 2013

---

[5]Plaintiffs are not left without remedy.  They may file an Article 78 proceeding against NYCHA in state court, which they have done, and may also assert breach of contract claims against NYCHA for violations of their HAP contracts.  *See, e.g.*, *35-41 Clarkson LLC,* 2012 WL 5992094, at *3 (finding that plaintiffs' post-deprivation proceedings available in state court, including instituting an Article 78 proceeding and asserting breach of contract claims against the local housing authority, were sufficient to satisfy due process concerns); *Konarski v. Donovan*, 863 F. Supp. 2d 21, 24-25 (D.D.C. 2012) (finding that landlords had "[an] alternate and more adequate remedy of bringing a breach of contract claim against the Public Housing Agency,[] an actual party to the contracts, instead of imploring the aid of HUD.") (citation and internal quotations omitted).